UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-8290-WM

IN RE:

SEALED CRIMINAL COMPLAINT,

_____/

FILED BY SW D.C.

Jun 14, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

# CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?     NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?    NO

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   NO

4. Did this matter involve the participation of or consultation now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   NO

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: *Adam C. McMichael*
ADAM McMICHAEL
Assistant United States Attorney
FLA Bar No.: 0772321
West Palm Beach, Florida 33401
Tel: (561) 820-8711
Fax: (561) 820-8777
Email: Adam.McMichael@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America <br> v. <br> **DAVID RICARDO MONTECE ELIAS** <br> _Defendant(s)_ | ) ) ) ) Case No.  **24-mj-8290-WM** ) ) ) |

FILED BY ___SW___ D.C.
Jun 14, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 2021 - present__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 923(a)(3) | Conspiracy to Traffic Firearms from the United States |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_Complainant's signature_

Brett A. Smith, Special Agent, ATF
_Printed name and title_

Sworn to before me and signed in my presence.
Sworn and Attested to me by Applicant by Telephone-Facetime
Per Fed.R.Crim.P. 4.1 and 4(d)

Date: __06/14/2024__

_Judge's signature_

City and state: __West Palm Beach, FL__   William Matthewman, U.S. Magistrate Judge
_Printed name and title_

### AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT

I, Brett A. Smith, being first duly sworn, do hereby depose and state as follows:

### Introduction

1. I, Brett A. Smith, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since 2020. I am currently assigned to the Miami Field Division and the Fort Pierce Field Office. I am responsible for investigating violations of federal criminal offenses in violation of Title 18, United States Code, including offenses involving the unlawful possession and transfer of firearms.

2. Your affiant submits this affidavit in support of a criminal complaint and arrest warrant charging **DAVID RICARDO MONTECE ELIAS** (hereinafter "MONTECE"), with conspiracy to traffic firearms from the United States, in violation of Title 18, United States Code, Section 933(a)(3).

3. Before my employment with ATF, your affiant was employed with the Gainesville, Florida Police Department as a police officer for twelve years. During my employment with the Gainesville Police Department, I was a detective in the Special Investigations Division for seven years. Through my employment with the Gainesville Police Department, I was the affiant for numerous search warrants that included the collection of illicit drugs, and firearms, and the analysis of electronic devices. I have experience investigating numerous firearm crimes, persons crimes, thefts, and fraud. As an ATF Special Agent, I have received training in federal firearms/explosives laws and regulations at the ATF National Academy. In addition, throughout my duties as a Special Agent, I have developed a growing knowledge of such firearms laws and the methods and tactics used by individuals to acquire, transfer, sell, and possess firearms illegally. I have also received training and gained experience in interviewing and interrogation techniques,

the execution of federal search warrants and seizures, and the identification and collection of evidence. In addition, I have personally participated in the execution of federal and state search warrants involving the search and seizure of illicit drugs, firearms, and electronic devices. I have experience investigating individuals involved in firearms trafficking conspiracies where firearms were smuggled from the United States to other countries.

4. The facts contained in this Affidavit come from my personal knowledge, training, and experience, as well as information and evidence obtained during my investigation from other members of law enforcement and witnesses. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the offenses listed herein.

**PROBABLE CAUSE**

I. **Background of Firearms Trafficking Investigation**

5. ATF and the Department of Homeland Security, Homeland Security Investigations ("HSI") have been engaged in a long-term investigation regarding the illegal exportation of firearms from the Southern District of Florida to Ecuador. The investigation began in approximately February of 2021, after an individual conducting straw purchases of firearms admitted to law enforcement his involvement in an international firearms trafficking scheme. That scheme involved the illegal exportation of firearms from the Southern District of Florida to Ecuador. Since then, law enforcement has recovered numerous firearms in Ecuador that have been used in violent crimes, wherein the serial numbers of those firearms were traced to purchasers in the Southern District of Florida and elsewhere. Presently, the investigation has received designation as an Organized Crime and Drug Enforcement Task Force operation which is

supported by the United States Attorney's Office in West Palm Beach, Florida. The investigation has since determined that hundreds of firearms have been trafficked from South Florida, including Palm Beach, Broward, and Miami Dade Counties to Ecuador, using freight forwarding companies, wherein the firearms were hidden inside machinery, vessels, and other containers used to disguise their presence from customs and border authorities in the United States and abroad.[1]

6.      In January 2023, ATF and HSI Special Agents conducted an interview with a firearms trafficker who identified MONTECE and others. The firearms trafficker had been arrested by federal authorities and was detained. During the interview, the firearms trafficker was accompanied by his attorney and agreed to speak with law enforcement about his role in a conspiracy to smuggle firearms to Ecuador. The interview was conducted in Spanish with the assistance of an interpreter. It should be noted that the firearm trafficker agreed to provide information to law enforcement with the hopes that his information would lead to a reduction of his sentence through a Rule 35 Motion filed by the United States. While his information was provided in the hope of a reduction, no promises were made by the agents or the United States to the firearms trafficker in exchange for his information. Presently, the firearms trafficker is in federal prison and shall be referenced hereinafter as the "cooperating defendant."

7.      During the interview of the cooperating defendant in January 2023, agents learned that she/he began trafficking firearms to Ecuador from the United States after being approached by MONTECE in late 2020 or early 2021. MONTECE asked the cooperating defendant to smuggle the firearms to Ecuador because she/he regularly shipped vehicle parts to Ecuador from Miami, Florida. The cooperating defendant explained that MONTECE offered to pay between $500.00

---

[1] Title 18, United States Code, Section 922(e) prohibits the delivery of firearms to a common carrier for shipment in interstate or foreign commerce without written notice. Title 18, United States Code, Section 554 prohibits the smuggling of goods from the United States contrary to the law and regulations of the United States. Both offenses are felonies.

3

and $1,000 per firearm shipped from the United States to Ecuador. Ultimately, the cooperating defendant admitted to shipping more than 400 firearms from the Southern District of Florida to Ecuador between 2020 and 2021. The cooperating defendant admitted that she/he started shipping guns illegally for MONTECE, but then also shipped guns illegally to Ecuador for others, however, a large amount of those guns were shipped at the direction of MONTECE.

8.      The cooperating defendant explained that MONTECE introduced her/him to the people who were selling the guns. Oftentimes, the seller advertised the firearm(s) on an online website that was used by individuals to sell their guns privately. One seller was identified by law enforcement as "X.R." The cooperating defendant explained that she/he was introduced to X.R., by MONTECE, for the purpose of acquiring firearms from X.R. to be shipped to Ecuador. The cooperating defendant stated the firearms he acquired from X.R. were shipped to Ecuador on behalf of MONTECE and others who worked with MONTECE. I recently searched the National Tracing Center database (E-Trace) and located multiple firearms recovered in crimes in Ecuador that had been originally purchased by X.R. in the United States. Two firearms specifically matched bills of sale between X.R., and the cooperating defendant which had been located and found during this investigation. These bills of sale were recovered from a lawful search of the cooperating defendant's iCloud account following a search warrant issued by United States Magistrate Judge Ryon M. McCabe (22-8102-RMM). The two firearms reflected in the bills of sales, and also recovered in Ecuador, were (1) an Anderson Manufacturing, AM-15 rifle, bearing serial number 20174953, and (2) an AK-47 variant assault rifle bearing serial number PMD-05277-18. The firearms were purchased by X.R. in Naples, Florida on August 26, 2020, and May 11, 2018, respectively, based on records and information obtained from ATF as part of this investigation.

4

Furthermore, the firearms were recovered in Ecuador on February 2, 2024, and September 3, 2021, respectively.

9. It should be noted that during the interview with the cooperating defendant in January 2023, she/he explained that MONTECE was from Ecuador, but that MONTECE had relocated to Mexico. The cooperating defendant explained that MONTECE was living in Mexico because individuals in Ecuador wanted to kill MONTECE. During the interview, the cooperating defendant was shown a photographic lineup that contained images of six different individuals, one of which was MONTECE. The cooperating defendant was able to positively identify MONTECE.

## II. ATF Confidential Informant

10. In February 2024, I reviewed pen register data pursuant to a Lawful Pen Register for the Social Media platform WhatsApp as part of this ongoing joint investigation between ATF and HSI concerning the trafficking of firearms from the United States to Ecuador. This PEN register data revealed that an account believed to belong to David MONTECE was in contact with a person located in the United States. The person was identified as a United States citizen and resident of Florida. Using records and information maintained by ATF, your affiant was able to locate records related to two different purchases of firearms by the individual from a gun dealer, Richie's Pawn and Gun, which is located in Tamarac, Florida. The firearms that were purchased included Glock 19X, 9mm, Pistol, and a Glock 26, 9mm, Pistol, purchased August 31, 2023, and a Glock 17, 9mm, Pistol and Beretta Model 92, 9mm, Pistol purchased September 7, 2023.

11. In March 2024, the individual was interdicted at the Fort Lauderdale Airport by HSI as he returned to the United States from foreign travel. Pursuant to its border search authority, the individual's cellular telephone was detained and searched. That device was found to have information and evidence of firearm trafficking involving MONTECE, including several text

messaging threads with various phone numbers beginning with a +52 Country Code, belonging to MONTECE. The +52 Country Code, according to the Federal Communications Commission, is for the Country of Mexico.

12. In April 2024, the individual met with the Special Agents from ATF and HSI in the presence of his attorney. During the meeting, the individual provided information about MONTECE and agreed to cooperate as a confidential informant ("CI") during the remaining portion of this investigation. It should be noted that the CI is cooperating with hopes of receiving judicial consideration in the future.

13. The CI informed law enforcement that around nine months before the date of the proffer, an individual known to him as "El Loco" or "David" reached out to him after he posted firearms for sale on Floridaguntrader.com. "David" began requesting AR-style pistols or rifles from him immediately, typically 4-10 at a time. The CI explained that a typical transaction involved "David" placing an order for firearms with the CI. When the firearms were available, "David" would send others to pay for or retrieve the guns. The CI identified one of those other persons as "Panda." The CI estimated that he met either "Panda" or the other person approximately thirty (30) times to sell them firearms at the request of MONTECE, who the CI knew then as "El Loco" or "David." Based on the number of meetings, and the average number of firearms provided, the CI estimated he sold approximately 150 firearms to MONTECE.

14. Your affiant reviewed the text message threads contained in the CI's cellphone. The text messages, using different Mexican numbers, began in July 2023 and continued through March 2024. Unless otherwise noted, the communications were predominately conducted in Spanish and those conversations were interpreted by an HSI Spanish-speaking agent for the purpose of this affidavit. At times, MONTECE used commonly known language, such as the term

"AR," which is an abbreviation for AR-15 rifles or pistols, when communicating with the CI. The electronic communications also included photographs of firearms that were being sent to MONTECE, negotiations about the price of the firearms, and discussions about the quantity of firearms. Furthermore, the electronic communications included identifying information for MONTECE, such as "Loko" and "David," as known to the CI.

15. In reviewing the contents of the cellphone, your affiant located a conversation with phone number +52-******9068, which is believed to involve MONTECE. That conversation began on July 27, 2023, with an initial text message from MONTECE which stated, "Helo how r u," "U still have the ars." The CI confirmed that she/he still had the firearms but was out of town. On July 30, 2023, there was another text message from MONTECE which stated, "You are ready on Miami" followed by "?" Also during the thread, MONTECE asked via text message, "Can u send me pic of the 2 ars." The CI responded with a picture of two AR-15 pistols, to which MONTECE replied, "How much for both?" The CI replied, "I'll do you 1600 flat I had them 1650." MONTECE replied "Ok tomorrow my guy can go."

16. I located another conversation in the CI phone with a text message dated July 31, 2023. This message appeared to reference the above sale of two AR-15s to MONTECE, but referenced another person. The message was sent from telephone number ***-***-7675 and stated, "Im David guy from the 2 ars where can we meet." That telephone number, ***-***-7675 was determined to be subscribed to Bertin MARRANZINI according to lawfully obtained subscriber records.

17. The CI identified a message thread from his cellphone with the telephone number ***-***-1224 and explained that the number belonged to "Panda." The CI stated that "Panda" was

7

a heavy-set male with a tattoo of a Panda bear on his hand. Lawfully obtained subscriber records for \*\*\*-\*\*\*-1224 identified the number as belonging also to Bertin MARRANZINI.

18. A Facebook search for Bertin MARRANZINI found an account listed in Miami, Florida with the nickname "Panda" attached. The Facebook page included a photograph of MARRANZINI which depicted a Panda bear tattoo on his hand. Using this photo, the CI positively identified "Panda" as Bertin MARRANZINI – one of the persons who paid for and received firearms from the CI on behalf of MONTECE.

19. An immigration database check of Bertin MARRANZINI determined that he was born in the Dominican Republic. At some point, MARRANZINI obtained Italian citizenship and currently has an official Italian passport. MARRANZINI entered the United States officially through the primary inspection lane at the Miami International Airport on December 16, 2016. MARRANZINI used his Italian passport and therefore qualified for admission under the auspices of ESTA, thereby bypassing the requirements and paperwork associated with a typical B1/B2 visitor's visa for pleasure. Upon admission, MARRANZINI was assigned ESTA tracking number R3R9XW76XXATTT24 and marked valid for two (2) years with an expiration date of November 13, 2018. According to immigration database records, MARRANZINI never left the United States after entering in December 2016 and is listed as a Visa Overstay. Therefore, MARRANZINI has no lawful status in the United States and is not permitted to purchase or possess firearms. Furthermore, MARRANZINI was never allowed to purchase or possess firearms as he was admitted under a nonimmigrant visa-like program (ESTA).

### III. June 2024 Firearms

20. On June 3, 2024, the CI, whose information has since proven to be credible and reliable, contacted MARRANZINI at telephone number \*\*\*-\*\*\*-4204. This telephone number

8

was an additional number found in the CI's phone for "Panda." According to lawful subscriber records, this number was also registered to MARRANZINI. The call was answered, and the following communications occurred between the CI and MARRANZINI. Unless otherwise noted, all communication were in the Spanish language. The substance of those conversations have been translated by an HSI Spanish-speaking agent for the purposes of this affidavit and are not official transcripts or verbatim.

21. The CI introduced himself and stated that it had been a while since they last spoke. MARRANZINI acknowledged and stated that he (MARRANZINI) thought the CI was in Colombia. MARRANZINI then asked the CI if he had any firearms for sale. The CI asked what firearms MARRANZINI specifically needed. MARRANZINI replied, "Give everything you got; I will buy it all right now." The CI told MARANZINI that he would need time. MARRANZINI then asked the CI to hurry up and not speak to "El Nano." According to the CI, "El Nano" was a reference to MONTECE.

22. In a second call on June 3, 2024, the CI told MARRANZINI that the person he purchases firearms from had not responded. MARRANZINI told the CI, "Let's see what we can do, I need firearms this week. Let me know, I am ready to make a deal for anything you have." The then CI asked, "Do you want AR15s or pistols?" MARRANZINI replied, "I want both."

23. On June 3, 2024, shortly after the CI spoke with MARRANZINI, Mexican number +52-******3075 contacted the CI. The first message from the number stated, "I am David, call or answer bro." Based upon this investigation, it was believed that "David" was MONTECE.

24. On June 3, 2024, the CI communicated with MONTECE over the telephone. Unless otherwise indicated, their communications were in Spanish. During the call, the CI explained how she/he lost their phone and therefore lost contact with MONTECE for a while. MONTECE then

9

instructed the CI to contact him further on WhatsApp as opposed to standard calling. The CI told MONTECE that she/he spoke with "Panda" and that the CI was waiting for her/his friend to call about what firearms were available. The CI told MONTECE that the CI's friend had AR15s and Glocks. MONTECE asked how much each AR would cost, and the CI told MONTECE they would be "about $900.00 each." MONTECE responded, ok, sounds good."

25.    On June 3, 2024, the CI and MONTECE exchanged additional text messages about the firearms. In one exchange, the CI asked MONTECE ". . . how many ARs and Glocks do you want, so I can tell my connection." MONTECE replied "10," to which the CI said in response, "I will see if he can bring me some this week, 10 each bro." MONTECE responded "10 AR y 5 Glocks."

26.    On June 3, 2024, after the above phone call with MONTECE, I interviewed the CI and asked if this was the same "David" she/he spoke to previously on several +52 numbers listed within the CI's cellphone. The CI explained that she/he recognized the voice and indicated it was the same person.

27.    On June 5, 2024, agents took photographs of firearms inside a display case at a Federal Firearm Licensee. The photographs were taken to be used as a visual representation of the firearms the CI could obtain for MONTECE and MARRANZINI.

28.    The CI first contacted MONTECE on June 5, 2024, and sent him a photograph of firearms in a display case. Special Agents were present with the CI when he conducted a controlled call to MONTECE. In the call, the CI explained to MONTECE that he could purchase Glocks from him at the store, but he could only have one Glock ready as he did not have access to anymore and did not have the money to purchase any. MONTECE responded, "But I have money, I have money in Miami." The CI responded, "I must have the money to go buy them" and MONTECE

10

responded, "Listen, bro, I need Ars. That's what I need." The CI then told MONTECE "Yes bro, ARs, that's what I was trying to tell Panda. I sent him a message and called him to tell him that my boy already placed the order." MONTECE then told the CI, "Look bro, listen to me, do not call Panda, speak to me directly, I am the one that gives Panda the money." The CI told MONTECE that he already got the order placed for the AR15s. MONTECE asked the CI how many and how much do they cost. The CI responded that they ordered ten, and he is waiting for them to arrive, and they will be $900.00 each. MONTECE responded that he wants six of the ARs and he will pay for them tomorrow. MONTECE asked if the CI can get him four ARs quickly and that he will pay for them even if they are more expensive.

29. While agents were still present with the CI on June 5, 2024, the CI placed a phone call to MARRANZINI at the \*\*\*-\*\*\*-4204. During the call, the CI told MARRANZINI that he already spoke to MONTECE and was told by him to deal directly with MONTECE only. The CI then told MARRANZINI that MONTECE told him that he had money in Miami and asked MARRANZINI "Is that you?" The CI then explained to MARRANZINI that her/his source of supply for firearms wanted to know if they were leaving the country or would remain in the United States. The CI explained that if the firearms remained stateside, the source of supply would want to remove the serial numbers. MARRANZINI responded with "I do not know."

30. On June 7, 2024, I received "Prop Guns" from the ATF firearms inventory. These are actual firearms set aside to be used in undercover operations. I set aside (3) AR-15-style rifles and two desert sand-colored Glock 19 pistols and photographed them together in a duffle bag. I provided the CI with several of these photographs.

31. On June 7, 2024, the CI sent the prop gun photographs to MONTECE with the caption, "Look bro, my friend sent me photos of the guns that arrived from the partial order he

11

placed. He will have Glocks also bro, they look very good, and he will have the rest of the AR15 next week." Immediately after the photos were sent to MONTECE, he (MONTECE) called the CI. The CI recorded a conversation with MONTECE, during which MONTECE told the CI that he wanted the firearms the next day and was willing to send "Panda" to Orlando, Florida to pay.

32. On June 7, 2024, the CI sent the same prop gun photographs to MARRANZINI. The CI also sent a text message to MARRANZINI, which stated in part, "I spoke with David. . ." "I sent him photos of the ARs my friend has received from the partial order. . ." and "The rest, including more Glocks that he wanted, will be arriving next week." "Tell him." The CI then had a recorded conversation with MARRANZINI. During the conversation, the CI told MARRANZINI she/he was trying to speak with "David." MARRANZINI interrupted and said, "Speak with me, speak with me." The CI explained to MARRANZINI that MONTECE told him he needed to work with him (MONTECE) directly as he provides the money to MARRANZINI. The CI then told MARRANZINI he was confused because MONTECE says to talk to him directly and then MARRANZINI says to work with him directly. MARRANZINI then said, "Hold on, hold, I am the one that has the money."

33. During the call on June 7, 2024, between the CI and MARRANZINI, MARRANZINI asked the price for each firearm. The CI told MARRANZINI that each Glock is $750.00 and each AR15 is $900.00. MARRANZINI then told the CI, "I will give you $850.00 each." The CI declined and explained that MONTECE had already agreed to pay $900.00 for the AR15s. The CI then told MARRANZINI that she/he had not agreed to a price for the Glocks with MONTECE. MARRANZINI replied, "Ok, that's not a problem, I will call him now." MARRANZINI also asked the CI if she/he had firearms available. The CI replied that it would not be until the following week. MARRANZINI also asked, "So how are we doing this? You are going

12

to have everything ready for me next week?" The CI confirmed saying, "Yes, everything will be ready next week."

### IV. Voice Confirmation of MONTECE

34. On June 12, 2024, your affiant and HSI Special Agent Michel Jarel met with the initial firearms trafficker, that is, the cooperating defendant who is referenced above in this affidavit. The cooperating defendant is currently located in the Bureau of Prisons and has continued to be available to the agents for assistance with this investigation.

35. On June 12, 2024, your affiant presented three recorded calls between the CI and "David" at telephone number +52-******3075. Without hesitation, the cooperating defendant identified MONTECE as the person who was speaking to the CI, known as "David." When asked how they recognized the voice, the cooperating defendant stated that she/he had known MONTECE for over fifteen years, and they used to box at the same gym. The cooperating defendant further stated that she/he recognized the voice based on two unique characteristics. First, the raspiness of his voice. Secondly, a slight speech impediment.

36. Your affiant also played four additional voice memos from the telephone +52 *******6783 that were sent to the CI's phone via WhatsApp in a previous thread. The cooperating defendant immediately identified MONTECE in all four voice memos.

## CONCLUSION

34. Based upon the above facts and evidence, I submit there is probable cause to believe that **DAVID RICARDO MONTECE ELIAS** has committed the offense of conspiracy to traffic firearms from the United States, in violation of Title 18, United States Code, Section 933(a)(3). There is also probable cause to believe, that while MONTECE is believed to be located currently in Mexico, there is probable cause to believe that the offense has occurred in the Southern District of Florida because a substantial step in furtherance of the conspiracy has occurred within the district.

FURTHER SAYETH YOUR AFFIANT NAUGHT.

Brett A. Smith
Special Agent, ATF

Sworn and attested to me telephonically
(Facetime) by the Applicant in accordance
with the requirements of Fed. R. Crim. P.4.1
this  14th  day of June 2024.

HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   DAVID RICARDO MONTECE ELIAS

**Case No**:   24-mj-8290-WM

Count #: 1

Conspiracy to Traffic Firearms from the United States

* **Max. Term of Imprisonment: 15 years**
* **Mandatory Min. Term of Imprisonment (if applicable): n/a**
* **Max. Supervised Release: 3 years**
* **Max. Fine:  $250,000**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**