UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-80066- LEIBOWITZ/REINHART

UNITED STATES OF AMERICA

vs.

DAVID RICARDO MONTECE ELIAS,

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and David Ricardo Montece Elias (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy, in violation of Title 18, United States Code, Section 371, Count Two of the Indictment, which charges the defendant with Engaging in the Business of Dealing in Firearms Without a License, in violation of Title 18, United States Code, Section 922(a)(1)(A), Count Eight of the Indictment, which charges the defendant with Smuggling Firearms from the United States, in violation of Title 18, United States Code, Section 554, Count Nine of the Indictment, which charges the defendant with Delivery of a Firearm to a Common Carrier, in violation of Title 18, United States Code, Section 922(e), and Count Ten of the Indictment, which charges the defendant with Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Section 5861(d). The defendant agrees that he is, in fact, guilty of the offenses.

2. This Office agrees to seek dismissal of Counts Three, Four, Five, Six, and Seven of the Indictment, as to this defendant, after sentencing.

3. The defendant is aware that the sentence will be imposed by the Court after considering

the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that as to each of Counts One, Two and Nine of the Indictment the Court may impose a statutory maximum term of imprisonment of up to five (5) years and a statutory maximum term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and may order forfeiture and restitution. The defendant also understands and acknowledges that as to each of Counts Eight and Ten of the Indictment the Court may impose a statutory maximum term of imprisonment of up to ten (10) years and a statutory maximum term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised

release, the Court may impose a fine of up to $250,000 for Count Eight and $10,000 as to Count Ten and may order forfeiture and restitution. The defendant further understands and acknowledges that the Court may impose a total statutory maximum term of imprisonment of thirty five (35) years for all the Counts.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant as to each Count. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by

timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by defendant, this Office, or a recommendation made jointly by the defendant and this Office.

9. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is

pleading guilty. Indeed, because the defendant is pleading guilty to the offenses in paragraph 1, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

10. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any firearm and ammunition involved in or used in the commission of such offense, pursuant to Title 18, United States Code, Section 924(d)(1).

11. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

12. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction.  The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture.  This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to

all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

13. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

<br>

                                              ~~HAYDEN P. O'BYRNE~~ Jason A. Reding Quiñones
                                              UNITED STATES ATTORNEY

9/17/25
DATE

By: BRIAN RALSTON
ASSISTANT UNITED STATES ATTORNEY

_____
DATE

By: RICHARD DELLA FERRA
COUNSEL FOR DEFENDANT

_____
DATE

By: DAVID RICARDO MONTECE ELIAS
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CR-80066-LEIBOWITZ/REINHART

UNITED STATES OF AMERICA

vs.

DAVID RICARDO MONTECE ELIAS,

  Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Defendant David Ricardo Montece Elias, (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Counts One, Two, Eight, Nine and Ten of the Indictment:

### Elements

### Count 1: Conspiracy; 18 U.S.C. § 371

**First**: The Defendant and another person in some way agreed to try to accomplish a shared and unlawful plan;

**Second**: The Defendant knew the unlawful purpose of the plan and willfully joined it;

**Third**: During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and

**Fourth**: The overt act was committed at or about the time alleged and with the purpose of carrying out and accomplishing some object of the conspiracy.

### Count 2: Engaging in the Business of Dealing in Firearm; 18 U.S.C. § 922(a)(1)(A)

**First**: The Defendant engaged in the business of dealing in firearms;

**Second**: The Defendant didn't have a Federal License; and

**Third**: The Defendant acted willfully.

1

### Count 8: Smuggling Firearms from the United States; 18 U.S.C. § 554

- **First:** The Defendant knowingly and fraudulently exported and sent, and attempted to export and send from the United States merchandise, and received, concealed and in any manner facilitated the transportation and concealment of such merchandise prior to exportation, knowing the same to be intended for exportation;
- **Second:** The exportation and sending was contrary to Title 18, United States Code, Sections 922(e) and 924(a)(1)(D), and Title 15, Code of Federal Regulations 730-774;
- **Third:** The Defendant knew the exportation and sending was contrary to law or regulation; and
- **Fourth:** The Defendant did something that was a substantial step toward committing the crime.

### Count 9: Delivery of a Firearm to Common Carrier Without Written Notification; 18 U.S.C. § 922(e)

- **First:** The Defendant knowingly delivered to a common carrier a package or other container in which there was twenty-five (25) AR-15 style, caliber .556, short-barreled rifles;
- **Second:** The package or container was to be shipped between a foreign nation and the United States;
- **Third:** The package or container was to be shipped to a person who was not licensed as a firearms dealer, manufacturer, importer, or collector; and
- **Fourth:** The defendant did not give written notice to the common carrier that there was twenty-five (25) AR-15 style, caliber .556, short-barreled rifles in the package or container.

### Count 10: Possession of an Unregistered Firearm; 26 U.S.C. § 5861(d)

- **First:** The Defendant knowingly possessed a firearm;
- **Second:** The firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record; and
- **Third:** The Defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

### Facts

1. Beginning in and around August 2021 and continuing through April 2025, the defendant conspired with individuals in the United States, Ecuador, and elsewhere, to purchase firearms in the United States and subsequently smuggle and sell the firearms to associates of the transnational

criminal organization "Los Choneros" in Ecuador. Upon the arrival of the firearms in Ecuador, the defendant would receive payment for the firearms and the principle objective for the purchases and sales was livelihood and profit. Throughout the conspiracy, the defendant never had a federal license to deal in firearms. Between August 2021 and March 2025, Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and Homeland Security Investigations (HSI) discovered that multiple firearms purchased, smuggled, and sold by the defendant were recovered in Ecuador. During this same time period, ATF and HIS agents seized multiple shipments containing concealed firearms destined for Ecuador.

2. In August 2022, the defendant contacted, via WhatsApp, J.I.O, J.R.J., X.R. and A.P.E., to purchase firearms on his behalf and to conceal the firearms inside a jet ski for shipment to Ecuador. The defendant contacted X.R. to coordinate the sale of multiple firearms to J.I.O. and J.R.J. for shipment to Ecuador. The defendant directed J.I.O. to pick up the jet ski from A.P.E. who had concealed the firearms inside the jet ski at the defendant's direction. On August 16, 2022, J.I.O., following the defendant's instruction, delivered a jet ski to a common carrier in Miami, Florida. Concealed within the jet ski were five (5) rifles and one (1) shotgun.

3. Prior to the shipment of the jet ski, the common carrier contacted law enforcement due to various anomalies. ATF and HSI officers responded, and pursuant to border search authority, inspected the jet ski. They discovered the concealed firearms, wrapped covered in green plastic and hidden underneath black painted spray foam. J.I.O nor the defendant gave written notice to the common carrier that the jet ski contained the firearms and no record was found to exist that the recipient of the firearms licensed as a firearms dealer, manufacturer, importer, or collector.

4. Following this seizure, J.I.O.'s cellular telephone was lawfully seized and search. Its contents revealed WhatsApp messages between J.I.O. and the defendant discussing the

concealment of firearms in shipments to Ecuador. Additional messages between J.I.O. and J.R.J. referenced an American Tactical AR-15-type rifle, which matched one of the seized firearms, and included a forwarded voice message from the defendant instructing J.I.O. on the consignee's name for the jet ski shipment.

5. Between October 2023 and March 2024, the defendant, using the alias "Giler Hidalgo Patrico Andres," utilized a common carrier in Miami, Florida to ship consumers goods such as oven hoods, air compressors, and nightstand lamps to Ecuador. Prior to the shipment of these goods, the defendant conspired with others in the United States to purchase and conceal firearms inside the goods.

6. On March 19, 2024, A.P.E., at the defendant's direction, delivered a Vissani oven hood box to the common carrier in Miami, Florida. After the delivery of the box, the owner of the common carrier contacted ATF agents, reporting that a shipment destined Ecuador had been delivered by the defendant under an alias. On March 20, 2024, ATF and HSI agents responded to the common carrier, and through the use of border search authority, lawfully inspected and searched the box. Agents located three (3) privately made AR-15 style pistols that lacked serial numbers concealed within the oven hood. Neither J.I.O. nor the defendant gave written notice to the common carrier that the jet ski contained the firearms and no record was found to exist that the recipient of the firearms licensed as a firearms dealer, manufacturer, importer, or collector.

7. In and around June 2024, a confidential source contacted, via WhatsApp, the defendant to discuss to sale of multiple firearms. The confidential source was familiar with the defendant due to previously serving as an intermediary between straw purchasers and those who concealed and shipped firearms to Ecuador on the defendant's behalf. During their conversation, the confidential

4

source agreed to sell nine firearms to the defendant, and the transaction was to be coordinated with B.M. who would receive and pay for the firearms on the defendant's behalf.

8. On June 18, 2024, B.M. informed the confidential source that he only had enough cash to purchase four firearms, and they agreed to meet at a hotel in Palm Beach County, Florida. During the meeting, the B.M. provided the confidential source with $3,600 in exchange for the firearms. Thereafter, the confidential source showed three rifles and one pistol to B.M. and placed them in B.M.'s vehicle. Following the exchange of currency and firearms, B.M. was taken into custody by ATF agents. B.M.'s phone was thereafter lawfully seized and searched. The contents of the phone revealed WhatsApp conversations between B.M. and the defendant wherein they the discussed the price, quantity, and type of firearms to be purchased. The conversation also included photographs of Western Union money transfers from the defendant to B.M. for B.M.'s purchase and smuggling of the firearms.

9. In November 2024, the defendant contacted V.B. and W.A.C. to coordinate the purchase of twenty-five (25) AR-15 style, caliber .556, short-barreled rifles, which were to be smuggled to Ecuador. W.A.C. took possession of the short-barreled rifles at the defendant's dierction. Thereafter, W.A.C. and J.A.Z. concealed the short-barreled rifles in five (5) Vissani oven hood boxes.

10. On December 2, 2024, J.A.Z. travelled to a common carrier located in Miami, Florida and delivered the oven hood boxes containing the concealed rifles for shipment to Ecuador. Neither J.A.Z., W.A.C. nor the defendant gave written notice to common carrier that the boxes contained the rifles and no record was found to exist that the recipient of the firearms licensed as a firearms dealer, manufacturer, importer, or collector.

11. Prior to shipment of the oven hood boxes, an employee from common carrier opened one of boxes after noticing inconsistencies in weight. Upon inspection, the employee observed spray foam inside and contacted an ATF agent. Once at the common carrier, ATF and HSI agents, pursuant to border search authority, conducted a lawful search of the oven hood boxes and discovered twenty-five (25) AR-15 style, caliber .556, short-barreled rifles covered in aluminum foil and expanding spray foam. An ATF agent later inspected the firearms and determined that the barrels of the firearms were all less than sixteen (16) inches in length.

12. A search was conducted of the National Firearms Registration and Transfer Record and no record was found that the short barreled rifles are registered to, have been acquired by lawful manufacture, importation, or making by, or transfer to the defendant and no application was found that approved the defendant to transfer and register the firearms to any person.

13. Following the seizure of the short barreled rifles and as part of the investigation, ATF agents seized and searched W.A.C.'s phone. A review of the contents of the phone showed WhatsApp conversations between the defendant and W.A.C. The conversation contained multiple photographs of firearms and Vissani oven hood boxes during the November and December 2024. Specifically on December 1, 2024, the defendant sent the following messages, "How are you going to put them in," and "With 5 or 6." W.A.C. responded, "Yes, I think 5. If something is missing, I'll arrange for an extra," "But I don't know if there's enough space for more." The defendant replied, "Let me know," and "They're small." Notably, agents seized 5 Vissani oven hood boxes and the rifles were only 5 inches in length ("small"). W.A.C. eventually sent a photograph of 25 AR-15 style rifles, the defendant responded by asking for a photograph and W.A.C. sent a photograph of 3 Vissani oven hoods and stated, "I'm still wrapping." On the evening of December 1, the defendant eventually asked, "Did you ship already."

14. In April 2025, ATF and HSI agents learned that the defendant had coordinated the purchase and concealment of firearms for delivery to a common carrier in Miami, Florida and destined for Ecuador. Based on this information, ATF and HSI agents coordinated the interception of shipment in Ecuador. Ecuadorian Police seized and inspected the shipment, which contained fourteen rifles, and two pistols concealed with larger speaker boxes.

15. All events occurred in the Southern District of Florida and elsewhere.

HAYDEN P. O'BYRNE  *Jsu A. Reding Quiñor*
UNITED STATES ATTORNEY

9/17/25
DATE

By: BRIAN D. RALSTON
ASSISTANT UNITED STATES ATTORNEY

DATE

By: RICHARD DELLA FERRA
COUNSEL FOR DEFENDANT

DATE

By: DAVID RICARDO MONTECE ELIAS
DEFENDANT

7